United States District Court
Southern District of Texas
FILED

APR - 9 2013

David J. Bradley, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS

BROWNSVILLE DIVISION

UNITED STATES OF AMERICA          :

    Plaintiff,          :

vs.          :

EUGENIO PEDRAZA and          :
MARCO RODRIGUEZ          :

    Defendants.          :

| | |
|---|---|
| Crim. No. | **B-13-305** |
| Charges: | |
| 18 U.S.C. § 371 (Conspiracy) [Count 1] | |
| 18 U.S.C. § 1519 and 2 (Falsification of Records in Federal Investigations) [Counts 2, 4, 6, 10, 11 and 13] | |
| 18 U.S.C. § 1505 and 2 (Obstruction of Agency Proceeding) [Counts 3, 5, 7, 8, and 9] | |
| 18 U.S.C. § 1512(c)(1) and 2 (Obstruction of Justice) [Count 12] | |

## INDICTMENT

The Grand Jury charges:

## GENERAL ALLEGATIONS

At all times relevant to this Indictment, unless otherwise stated:

### The Department of Homeland Security
### and its Office of Inspector General

1.    The United States Department of Homeland Security ("DHS") was a department and agency within the executive branch of the United States government charged with protecting the United States from threats to the national security, including ensuring the security of the borders of the United States.

2.      DHS's component agencies included, among others, United States Customs and Border Protection ("CBP") and United States Immigration and Customs Enforcement ("ICE"). CBP was the DHS component agency with the day-to-day responsibility for securing the borders of the United States, keeping terrorists and their weapons out of the United States, enforcing immigration and drug laws, and facilitating lawful international trade and travel.  ICE was DHS's principal investigative component, charged with conducting civil and criminal investigations to promote homeland security and public safety, as well as conducting operations enforcing immigration laws and removing those illegally present in the United States from within its borders.

3.      The Department of Homeland Security Office of Inspector General ("DHS-OIG") was an independent and objective inspection, audit, and investigative body charged with promoting effectiveness, efficiency, and economy in the DHS's programs and operations, and preventing and detecting fraud, abuse, mismanagement, and waste, including criminal conduct, in such programs and operations.  Pursuant to the Inspector General Act of 1978, as amended, DHS-OIG was responsible for investigating alleged corruption and misconduct by CBP and ICE employees.  DHS-OIG maintained its headquarters in Washington, DC.  DHS-OIG was a department and agency within the executive branch of the United States government.

4.      In DHS-OIG's Semiannual Report to Congress dated April 1, 2011 through September 30, 2011, it reported that it had initiated 715 investigations, closed 433 investigations, referred 202 investigations for criminal prosecution, had 81 investigations accepted for prosecution and had 74 investigation declined for prosecution.  DHS-OIG also reported that its

investigations resulted in 110 indictments and 136 convictions, and that it had 2,564

investigations open at the time of the report.

5.     DHS-OIG maintained a policy of initiating investigations of all allegations referred

to it concerning corruption relating to the borders of the United States, including allegations

against CBP and ICE personnel.  These investigations were conducted by Special Agents within

DHS-OIG's Office of Investigations ("INV").

DHS-OIG's Office of Investigations
and its Policies and Procedures

6.     INV maintained personnel both at DHS-OIG headquarters in Washington, DC as

well as approximately thirteen field offices, five resident offices, and fourteen sub-offices

throughout the United States.  In addition, INV maintained a Special Agent Handbook ("SAH")

setting forth the policies and procedures to which its Special Agents were required to adhere.

7.     In areas in which the Federal Bureau of Investigation ("FBI") and DHS-OIG have

concurrent jurisdiction, such as allegations of corruption against DHS employees, DHS-OIG

agreed to promptly notify the FBI of the initiation of a criminal investigation.  According to the

SAH, such notification was required to be accomplished by transmitting a notification letter to the

FBI within 30 days of the initiation of an investigation, absent exigent circumstances.

8.     Memoranda of Activity ("MOAs") were documents required to be used by Special

Agents to record various types of investigative activity, including interviews, reviews of records,

arrests, search warrant executions, service of subpoenas, and surveillance.  Moreover, according

to the SAH, MOAs were also required to be signed by the Special Agent who authored the MOA

as well as a supervisor, and were then to be maintained in the investigative case file.  MOAs were

3

required to be submitted for approval within five working days after the activity, or as soon

thereafter as was practical.  MOAs were legal documents with a wide range of potential uses.

MOAs were used by Special Agents to assist them if called upon to testify about their

investigative activity before grand juries, in hearings, criminal trials, or other proceedings.  MOAs

could be required to be provided to a party on discovery in any resulting criminal or civil

litigation.  MOAs could also be subsequently reviewed by federal law enforcement officers

investigating other, potentially related matters.  For these and other reasons, and consistent with

training received by DHS-OIG Special Agents, MOAs were required to be completed accurately,

completely and truthfully.

      9.     Case reviews were regularly scheduled evaluations and discussions of the status

and progress of investigations held between a Special Agent and a supervisor.  According to the

SAH, case reviews were required to be conducted on a quarterly or a more frequent basis, at the

discretion of the relevant Special Agent-in-Charge.  Also according to the SAH, case reviews

were to be recorded and documented on supervisory case review worksheets, which were to

include a notation of investigative progress, the date of the case review, and the supervisor's

initials.

      10.     Reports of Investigation ("ROIs") and abbreviated reports of investigation

("AROIs") were documents used by Special Agents to report their findings at the conclusion of an

investigation.  Supporting MOAs were required to be attached to an ROI or AROI as exhibits.

According to the SAH, draft ROIs and AROIs were required to be forwarded to INV personnel at

DHS-OIG headquarters for review before an investigation was closed.  Also according to the

SAH, final versions of ROIs and AROIs were required to be signed by the Special Agent who authored it and a supervisor, and forwarded to DHS-OIG headquarters upon the investigation's conclusion.

### DHS-OIG Field Office Inspections

11.     DHS-OIG maintained a practice of conducting periodic internal inspections of its own field offices in order to ensure that they were meeting all relevant investigative standards and policies.  These inspections were conducted by INV's Office of Inspections.  Personnel who conducted these inspections included, among others, Special Agents assigned to the Office of Special Investigations ("OSI").

12.     OSI was a component of INV that was responsible for, among other things, conducting investigations of allegations of wrongdoing, including potential criminal wrongdoing, against DHS-OIG employees.  At various times, OSI has also been known within DHS-OIG as the Special Investigations Division ("SID").

### DHS-OIG's McAllen Field Office

13.     INV maintained a field office near the southern border of the United States in McAllen, Texas ("MCA").  MCA was staffed by a Special Agent-in-Charge, an Assistant Special Agent-in-Charge, approximately thirteen additional Special Agents, an administrative officer, and an intern.

14.     An inspection to evaluate whether DHS-OIG's internal investigative standards and policies were being followed at MCA was originally scheduled for February 2011.  From in or about February 2011, both the lead inspector and MCA management began preparing for an

inspection, including by communicating with each other. On or about July 13, 2011, the formal

inspection process began when MCA management was formally advised that the inspection would

be conducted in September 2011. From on or about September 13, 2011 through on or about

September 16, 2011, DHS-OIG conducted an inspection of MCA.

<u>Relevant Individuals Employed At MCA</u>

15.     Defendant EUGENIO PEDRAZA served as the Special Agent-in-Charge of MCA

from on in about 2009 until in or about October 2011, and the Associate Special Agent in Charge

of MCA from in or about October 2011 to the present. From in or about May 2003 until in or

about 2009, defendant PEDRAZA also served in various other positions at MCA, including as

Resident Agent-in-Charge. Before his employment at DHS-OIG, defendant PEDRAZA served as

a Special Agent with Department of Justice Office of Inspector General from in or about 1997 to

in or about May 2003, and as an agent with the United States Border Patrol, now part of CBP,

from in or about 1988 to in or about 1997.

16.     Defendant MARCO RODRIGUEZ served a Special Agent with DHS-OIG at MCA

from in or about July 2010 to the present. Before his employment at DHS-OIG, defendant

RODRIGUEZ served as a Special Agent with ICE from in or about 2004 to in or about July 2010

and as an agent with the United States Border Patrol, now part of CBP, from in or about 1997 to

in or about 2004.

17.     Special Agents A through G served as Special Agents with DHS-OIG at MCA in

2011 and 2012.

Relevant MCA Criminal Investigations

18.    Criminal Investigation 1 was initiated by DHS-OIG in or about March 2010.  The investigation concerned allegations that a CBP officer was conspiring with other CBP officers to assist the unlawful smuggling of undocumented aliens and narcotics into the United States through the port of entry in Brownsville, Texas.  In or about June or July 2011, Criminal Investigation 1 was open and assigned to Special Agents A and B.

19.    Criminal Investigation 2 was initiated by DHS-OIG in or about December 2009. The investigation concerned allegations that a CBP officer and a border patrol agent were assisting the unlawful smuggling of undocumented aliens and narcotics into the United States through the port of entry in Brownsville, Texas.  As of August 2011, Criminal Investigation 2 was open and assigned to defendant MARCO RODRIGUEZ.

20.    Criminal Investigation 3 was initiated by DHS-OIG in or about July 2010.  The investigation concerned allegations that a CBP officer was assisting the unlawful smuggling of undocumented aliens into the United States through the use of fraudulent documents that allowed them to pass through the Gateway International Bridge in Brownsville, Texas.  As of August 2011, Criminal Investigation 3 was open and assigned to defendant MARCO RODRIGUEZ.

21.    Criminal Investigation 4 was initiated by DHS-OIG in or about July 2010.  The investigation concerned allegations that a CBP officer had been bribed to permit a large quantity of illegal drugs to be transported into the United States at the port of entry at Pharr, Texas.  In or about August 2011, Criminal Investigation 4 was open and assigned to Special Agent D.

22.    Criminal Investigation 5 was initiated by DHS-OIG in or about April 2010.  The

investigation concerned allegations that a border patrol agent was assisting the unlawful smuggling of undocumented aliens and narcotics into the United States. In or about August 2011, Criminal Investigation 5 was open and assigned to Special Agent E.

23.    Criminal Investigation 6 was initiated by DHS-OIG in or about January 2010. The investigation concerned allegations that a CBP officer at the Gateway International Bridge in Brownsville, Texas was unlawfully selling fraudulent documents that would permit the holder to cross the border into the United States.

24.    Criminal Investigation 7 was initiated by DHS-OIG in or about November 2009. The investigation concerned allegations that a CBP officer was assisting the unlawful smuggling of undocumented aliens into the United States through the port of entry in Brownsville, Texas. In or about February 2011, Criminal Investigation 7 was assigned to Special Agent G. A confidential human source (the "CHS") assisted Special Agent G with Criminal Investigation 7. The CHS was a Mexican citizen who was legally present in the United States on the condition that the CHS assist DHS-OIG with ongoing investigations.

## COUNT ONE
18 U.S.C. § 371
(Conspiracy)

25.    The allegations contained in paragraphs 1-24 of this Indictment are realleged as though fully set forth within.

26.    From in or about February 2011 through in or about January 2012, in the Southern District of Texas and elsewhere, defendants

EUGENIO PEDRAZA
and
MARCO RODRIGUEZ,

along with Special Agent A and Special Agent C, did knowingly and willfully combine, conspire, confederate and agree with each other, and other persons known and unknown to the Grand Jury:

a.    to falsify documents and make false entries in records with the intent to impede, obstruct, and influence the investigation and proper administration of a matter within the jurisdiction of DHS-OIG, specifically criminal investigations, and an internal DHS-OIG inspection of MCA, and in relation to and in contemplation of any such matter, in violation of 18 U.S.C. § 1519; and;

b.    to intentionally and corruptly endeavor to influence, obstruct and impede the due and proper administration of the law, under which a proceeding, to wit, an internal DHS-OIG inspection of MCA, was pending before DHS-OIG, in violation of 18 U.S.C. § 1505.

## PURPOSES OF THE CONSPIRACY

27.    It was a purpose of the conspiracy to conceal severe lapses in DHS-OIG's investigative standards and internal policies from DHS-OIG personnel conducting the internal

inspection of MCA, including but not limited to:

    a.    Defendant PEDRAZA's failure to ensure that investigations assigned to MCA were conducted promptly, thoroughly and in accordance with the SAH, which resulted in lengthy periods of inactivity in particular criminal investigations;

    b.    Defendant PEDRAZA's failure to provide Special Agents in MCA with adequate training and supervision, including defendant PEDRAZA's failure to conduct timely case reviews in accordance with the SAH; and

    c.    Defendant PEDRAZA's failure to ensure that the FBI was being promptly notified of DHS-OIG investigations.

## MANNER AND MEANS OF THE CONSPIRACY

28.    It was part of the manner and means of the conspiracy that the conspirators would falsify and backdate documents and place them in MCA criminal investigative case files for possible review by DHS-OIG personnel conducting the MCA inspection. Such documents included, but were not limited to:

    a.    Backdated MOAs that falsely reflected investigative activity that did not, in truth and fact, occur; so that gaps of inactivity in the investigation were filled;

    b.    Backdated supervisory case review worksheets that falsely reflected case reviews that did not, in truth and fact, occur; and

    c.    Backdated FBI notification letters that were not, in truth and fact, sent to

the FBI.

## OVERT ACTS
### Initial Preparations for the MCA Inspection

29.    In or about February or March 2011, defendant PEDRAZA directed MCA's administrative officer and intern to begin to review the MCA investigative case files to ensure that they contained all the documents that would be expected by DHS-OIG personnel conducting the MCA inspection.

30.    In or about February or March through September 2011, defendant PEDRAZA created and initialed falsified supervisory case review worksheets documenting case reviews that did not, in truth and fact, occur, and caused them to be placed in investigative case files.

31.    In or about February or March through September 2011, on numerous occasions, upon being notified by the intern that a case file did not contain an FBI notification letter, defendant PEDRAZA directed the intern to draft backdated letters falsely appearing to timely notify the FBI of DHS-OIG's investigation, place them in the case files, but not to send them to the FBI.  The intern did as defendant PEDRAZA directed.

32.    On or about August 3, 2011, in response to defendant PEDRAZA's directive to review MCA's investigative case files, defendant PEDRAZA received from the intern an email identifying a series of investigative case files, including two assigned to defendant PEDRAZA, that did not contain FBI notification letters.

33.    In or about August 2011, defendant PEDRAZA directed the intern to draft backdated FBI notification letters for the two cases assigned to defendant PEDRAZA that falsely appeared to timely notify the FBI of DHS-OIG's investigation, place them in the investigative

11

case files, but not to send them to the FBI.  The intern did as defendant PEDRAZA directed.

34.     On or about August 4, 2011, in response to defendant PEDRAZA's request to review MCA's investigative case files, defendant PEDRAZA received from the intern an email identifying a series of investigative case files that had "little or no" investigative work documented in them, including the case files for Criminal Investigations 1-5.

<u>Criminal Investigation 1</u>

35.     On or about August 30, 2011, defendant PEDRAZA directed Special Agent A and Special Agent B to create falsified MOAs to be placed in the case file for Criminal Investigation 1 that would fill a gap of inactivity in the investigation.

36.     On or about August 30, 2011, defendant PEDRAZA directed Special Agent A to break up the dates of the falsified MOAs to cover the entire gap of activity in Criminal Investigation 1, and suggested types of investigative activity that could be documented.

37.     On or about August 30, 2011, in directing the Special Agent A to create falsified MOAs, defendant PEDRAZA stated that he knew it was "fucked up," or words to that effect, but that Special Agent A had to do it.

38.     On or about August 30, 2011, Special Agent A agreed to draft falsified MOAs for another Special Agent's signature, after explaining to defendant PEDRAZA that part of the gap of inactivity in Criminal Investigation 1 predated the time when both Special Agent A and Special Agent B were employed by and investigating cases for DHS-OIG.

39.     On or about August 30, 2011, defendant PEDRAZA directed Special Agent C to sign the falsified MOAs, and Special Agent C agreed to do so.

40.    On or about September 1, 2011, Special Agent A emailed defendant PEDRAZA drafts of the falsified MOAs.

41.    On or about September 2, 2011, defendant PEDRAZA edited the falsified MOAs and emailed his edits of the drafts to Special Agent A.

42.    In or about September 2011, defendant PEDRAZA, Special Agent C and Special Agent F signed and backdated the falsified MOAs.

43.    In or about September 2011, defendant PEDRAZA, Special Agent A, Special Agent C, and Special Agent F caused the falsified MOAs to be placed in the case file for Criminal Investigation 1.

<u>Criminal Investigation 2</u>

44    In or about August or September 2011, defendant PEDRAZA directed defendant RODRIGUEZ to create falsified MOAs to be placed in the case file for Criminal Investigation 2 that would fill a gap of inactivity in the investigation, including a period predating defendant RODRIGUEZ's employment at DHS-OIG.

45.    In or about August or September 2011, defendant RODRIGUEZ and defendant PEDRAZA created the falsified MOAs, including MOAs that predated defendant RODRIGUEZ's employment at DHS-OIG, backdated and signed them, and caused them to be placed in the case file for Criminal Investigation 2.

46.    In or about August or September 2011, defendant PEDRAZA created and initialed a falsified supervisory case review worksheet documenting case reviews that did not in fact occur with defendant RODRIGUEZ, including case reviews that predated defendant RODRIGUEZ's

employment with DHS-OIG, and caused it to be placed in the case file for Criminal Investigation 2.

### Criminal Investigation 3

47.    In or about August or September 2011, defendant PEDRAZA directed defendant RODRIGUEZ to create falsified MOAs to be placed in the case file for Criminal Investigation 3 that would fill a gap of inactivity in the investigation, including a period predating defendant RODRIGUEZ's employment at DHS-OIG.

48.    In or about August or September 2011, defendant RODRIGUEZ and defendant PEDRAZA created the falsified MOAs, including MOAs that predated defendant RODRIGUEZ's employment at DHS-OIG, signed and backdated them, and caused them to be placed in the case file for Criminal Investigation 3.

49.    In or about August or September 2011, defendant PEDRAZA created and initialed a falsified supervisory case review worksheet documenting case reviews that did not in fact occur with defendant RODRIGUEZ, including case reviews that predated defendant RODRIGUEZ's employment with DHS-OIG, and caused it to be placed in the case file for Criminal Investigation 3.

### Criminal Investigation 4

50.    In or about August 2011, defendant PEDRAZA directed Special Agent D to create falsified MOAs to be placed in the case file for Criminal Investigation 4 that would fill a gap of inactivity in the investigation, including a period predating the case's assignment to Special Agent D. Special Agent D refused to do so.

14

Criminal Investigation 5

51.     In or about August 2011, defendant PEDRAZA directed Special Agent E to create falsified MOAs to be placed in the case file for Criminal Investigation 5 that would fill a gap of inactivity in the investigation, including a period predating the case's assignment to Special Agent E.  Special Agent E refused to do so.

All in violation of Title 18, United States Code, Section 371.

## COUNT TWO
18 U.S.C. §§ 1519 and 2
(Falsification of Records in Federal Investigations and Aiding and Abetting)

52.     The allegations contained in paragraphs 1-24 and 29-51 of this Indictment are realleged as though fully set forth within.

53.     From in or about August 2011 through in or about September 2011, in the Southern District of Texas and elsewhere, the defendant

EUGENIO PEDRAZA,

along with Special Agent A and Special Agent C, while aiding and abetting one another, and while acting in relation to and in contemplation of a matter within the jurisdiction of DHS-OIG, specifically Criminal Investigation 1 and an internal DHS-OIG inspection of MCA, knowingly falsified documents, specifically MOAs, and made false entries in a record, specifically, the case file for Criminal Investigation 1, with the intent to impede, obstruct, and influence the investigation and proper administration of the matter.

All in violation of Title 18, United States Code, Section 1519 and 2.

## COUNT THREE
18 U.S.C. §§ 1505 and 2
(Obstruction of Agency Proceeding and Aiding and Abetting)

54.     The allegations contained in paragraphs 1-24 and 29-51 of this Indictment are realleged as though fully set forth within.

55.     From in or about August 2011 through in or about September 2011, in the Southern District of Texas and elsewhere, the defendant

EUGENIO PEDRAZA,

along with Special Agent A and Special Agent C, while aiding and abetting one another, did corruptly endeavor to influence, obstruct and impede the due and proper administration of the law under which a proceeding, to wit an internal DHS-OIG inspection of MCA, was pending before DHS-OIG, by falsifying MOAs and placing them in the case file for Criminal Investigation 1.

All in violation of Title 18, United States Code, Section 1505 and 2.

## COUNT FOUR
18 U.S.C. §§ 1519 and 2
(Falsification of Records in Federal Investigations and Aiding and Abetting)

56.    The allegations contained in paragraphs 1-24 and 29-51 of this Indictment are realleged as though fully set forth within.

57.    From in or about August 2011 through in or about September 2011, in the Southern District of Texas and elsewhere, the defendants

EUGENIO PEDRAZA
and
MARCO RODRIGUEZ,

while aiding and abetting one another, and while acting in relation to and in contemplation of a matter within the jurisdiction of DHS-OIG, specifically Criminal Investigation 2 and an internal DHS-OIG inspection of MCA, knowingly falsified documents, specifically MOAs and supervisory case review worksheets, and made false entries in a record, specifically, the case file for Criminal Investigation 2, with the intent to impede, obstruct, and influence the investigation and proper administration of the matter.

All in violation of Title 18, United States Code, Section 1519 and 2.

## COUNT FIVE
18 U.S.C. §§ 1505 and 2
(Obstruction of Agency Proceeding and Aiding and Abetting)

58.    The allegations contained in paragraphs 1-24 and 29-51 of this Indictment are

realleged as though fully set forth within.

59.    From in or about August 2011 through in or about September 2011, in the

Southern District of Texas and elsewhere, the defendants

EUGENIO PEDRAZA
and
MARCO RODRIGUEZ,

while aiding and abetting one another, did corruptly endeavor to influence, obstruct and impede

the due and proper administration of the law under which a proceeding, to wit an internal DHS-

OIG inspection of MCA, was pending before DHS-OIG, by falsifying MOAs and supervisory case

review worksheets and placing them in the case file for Criminal Investigation 2.

All in violation of Title 18, United States Code, Section 1505 and 2.

## COUNT SIX
18 U.S.C. §§ 1519 and 2
(Falsification of Records in Federal Investigations and Aiding and Abetting)

60.     The allegations contained in paragraphs 1-24 and 29-51 of this Indictment are

realleged as though fully set forth within.

61.     From in or about August 2011 through in or about September 2011, in the

Southern District of Texas and elsewhere, the defendants

EUGENIO PEDRAZA
and
MARCO RODRIGUEZ,

while aiding and abetting one another, and while acting in relation to and in contemplation of a

matter within the jurisdiction of DHS-OIG, specifically Criminal Investigation 3 and an internal

DHS-OIG inspection of MCA, knowingly falsified documents, specifically MOAs and

supervisory case review worksheets, and made false entries in a record, specifically, the case file

for Criminal Investigation 3, with the intent to impede, obstruct, and influence the investigation

and proper administration of the matter.

All in violation of Title 18, United States Code, Section 1519 and 2.

## COUNT SEVEN
18 U.S.C. §§ 1505 and 2
(Obstruction of Agency Proceeding and Aiding and Abetting)

62.    The allegations contained in paragraphs 1-24 and 29-51 of this Indictment are realleged as though fully set forth within.

63.    From in or about August 2011 through in or about September 2011, in the Southern District of Texas and elsewhere, the defendants

EUGENIO PEDRAZA
and
MARCO RODRIGUEZ,

while aiding and abetting one another, did corruptly endeavor to influence, obstruct and impede the due and proper administration of the law under which a proceeding, to wit an internal DHS-OIG inspection of MCA, was pending before DHS-OIG, by falsifying MOAs and supervisory case review worksheets and placing them in the case file for Criminal Investigation 3.

All in violation of Title 18, United States Code, Section 1505 and 2.

## COUNT EIGHT
18 U.S.C. § 1505
(Obstruction of Agency Proceeding and Aiding and Abetting)

64.     The allegations contained in paragraphs 1-24 and 29-51 of this Indictment are realleged as though fully set forth within.

65.     In or about August 2011, in the Southern District of Texas and elsewhere, the defendant

EUGENIO PEDRAZA,

did corruptly endeavor to influence, obstruct and impede the due and proper administration of the law under which a proceeding, to wit an internal DHS-OIG inspection of MCA, was pending before DHS-OIG, by attempting to cause the falsification of MOAs relating to Criminal Investigation 4.

All in violation of Title 18, United States Code, Section 1505.

### COUNT NINE
18 U.S.C. § 1505
(Obstruction of Agency Proceeding and Aiding and Abetting)

66.     The allegations contained in paragraphs 1-24 and 29-51 of this Indictment are realleged as though fully set forth within.

67.     In or about August 2011, in the Southern District of Texas and elsewhere, the defendant

EUGENIO PEDRAZA,

did corruptly endeavor to influence, obstruct and impede the due and proper administration of the law under which a proceeding, to wit an internal DHS-OIG inspection of MCA, was pending before DHS-OIG, by attempting to cause the falsification of MOAs relating to Criminal Investigation 5.

All in violation of Title 18, United States Code, Section 1505.

**COUNT TEN**
18 U.S.C. §§ 1519 and 2
(Falsification of Records in Federal Investigations and Aiding and Abetting)

68.     The allegations contained in paragraphs 1-24 and 29-51 of this Indictment

are realleged as though fully set forth within.

69.     In or about February 2011, in response to an email from DHS-OIG headquarters

identifying Criminal Investigation 6 as an investigation that was assigned to defendant PEDRAZA

and that was potentially suitable for closure, defendant PEDRAZA directed Special Agent F, who

had never been assigned to Criminal Investigation 6, to draft an MOA and an AROI reflecting

investigative activity that had not been completed by Special Agent F and that provided a false

justification to close Criminal Investigation 6.

70.     On or about February 10, 2011, Special Agent F did as defendant PEDRAZA

directed, and emailed the draft MOA and AROI to defendant PEDRAZA.

71.     In or about February 2011, defendant PEDRAZA edited the MOA and AROI and

caused them to be submitted to DHS-OIG headquarters personnel for review.

72.     In or about March 2011, defendant PEDRAZA and Special Agent F signed the

final versions of the MOA and AROI and caused them to be placed in the case file for Criminal

Investigation 6.

73.     On or about March 4, 2011, defendant PEDRAZA caused the MOA and AROI to

be submitted to DHS-OIG headquarters in connection with closing Criminal Investigation 6.

74.     From in or about February 2011 through in or about March 2011, in the Southern

District of Texas and elsewhere, the defendant

24

EUGENIO PEDRAZA,

along with Special Agent F, while aiding and abetting one another, and while acting in relation to and in contemplation of a matter within the jurisdiction of DHS-OIG, specifically Criminal Investigation 6, knowingly falsified documents, specifically, a MOA and an AROI, and made false entries in a record, specifically, the case file for Criminal Investigation 6, with the intent to impede, obstruct, and influence the investigation and proper administration of that matter.

All in violation of Title 18, United States Code, Section 1519 and 2.

## COUNT ELEVEN
### 18 U.S.C. §§ 1519 and 2
(Falsification of Records in Federal Investigations and Aiding and Abetting)

75.     The allegations contained in paragraphs 1-24 and 29-51 of this Indictment are realleged as though fully set forth within.

76.     By in or about March 2011, the CHS's role in assisting Special Agent G with Criminal Investigation 7 was complete, and Special Agent G made the CHS available to Special Agents in DHS-OIG's Dallas, Texas Field Office (DAL) for use in their investigations.  On or about March 29, 2011, the CHS made allegations of misconduct against Special Agent G to Special Agents at DAL.  On or about that same day, the Special Agent-in-Charge of DAL forwarded the allegations to DHS-OIG headquarters and expected that OSI would investigate them.

77.     In or about April 2011, after becoming aware that the CHS had made allegations of misconduct against Special Agent G, and before an OSI investigation was initiated, defendant PEDRAZA caused Special Agent G to prepare to deactivate the CHS and return the CHS to Mexico.  On or about April 29, 2011, the CHS was deactivated and returned to Mexico.  Special Agent G did not personally participate in returning the CHS to Mexico due to the allegations of misconduct that had been made against him.

78.     In or about April 2011, after the CHS had been deactivated and returned to Mexico, and in anticipation of closing Criminal Investigation 7, defendant PEDRAZA directed Special Agent G to draft an AROI for Criminal Investigation 7.

79.     On or about April 8, 2011, defendant PEDRAZA emailed Special Agent G that he

"want[ed] it [the AROI] ready for HQ."

80.     In or about May 2011, defendant PEDRAZA directed Special Agent G to draft an MOA documenting the CHS's deactivation and return to Mexico.

81.     On or about May 6, 2011, in response to defendant PEDRAZA's request, Special Agent G emailed defendant PEDRAZA a draft MOA. The draft truthfully and accurately identified defendant RODRIGUEZ and Special Agent E as the DHS-OIG Special Agents who had returned the CHS to Mexico.

82.     On or about May 6, 2011, defendant PEDRAZA emailed his edits of the draft MOA to Special Agent G. In his draft, defendant PEDRAZA deleted the names of defendant RODRIGUEZ and Special Agent E and replaced them with "[Special Agent G] and Joe Blow."

83.     On or about May 6, 2011, defendant PEDRAZA explained to Special Agent G that DHS-OIG headquarters would expect the MOA to reflect his name because, as the CHS's handler, he would ordinarily have returned the CHS to Mexico.

84.     On or about May 6, 2011, Special Agent G did as defendant PEDRAZA directed, and edited the draft MOA to falsely identify the agents who had returned the CHS to Mexico as Special Agent G and Special Agent E.

85.     On or about May 2011, Special Agent G and defendant PEDRAZA finished drafting an AROI closing Criminal Investigation 7.

86.     On or about May 2011, defendant PEDRAZA caused the falsified MOA and falsified AROI to be submitted to DHS-OIG headquarters personnel for review.

87.     On or about May 2011, defendant PEDRAZA and Special Agent G signed the final

versions of the falsified MOA and falsified AROI and caused them to be placed in the case file for Criminal Investigation 7.

88.     On or about May 26, 2011, defendant PEDRAZA caused the falsified MOA and falsified AROI to be submitted to DHS-OIG headquarters in connection with closing Criminal Investigation 7.

89.     In or about May 2011, in the Southern District of Texas and elsewhere, the defendant

EUGENIO PEDRAZA,

along with Special Agent G, while aiding and abetting one another, and while acting in relation to and in contemplation of a matter within the jurisdiction of DHS-OIG, specifically Criminal Investigation 7, knowingly falsified documents, specifically, a MOA and an AROI, and made false entries in a record, specifically, the case file for Criminal Investigation 7, with the intent to impede, obstruct, and influence the investigation and proper administration of that matter.

All in violation of Title 18, United States Code, Section 1519 and 2.

## COUNT TWELVE
### 18 U.S.C. §§ 1512(c)(1) and 2
(Obstruction of Justice and Aiding and Abetting)

90.     The allegations contained in paragraphs 1-24 and 29-51 of this Indictment are realleged as though fully set forth within.

91.     In or about December 2011, the FBI began conducting an investigation of allegations of falsified documents at MCA, in part relating to the MCA inspection.  By on about early February 2012, a Grand Jury empaneled in the District of Columbia was also conducting an investigation of the allegations.

92.     By on or about January 25, 2012, defendant PEDRAZA was on notice of both the FBI and Grand Jury investigations described above.

93.     From in or about January 2012 through in or about February 2012, in the Southern District of Texas and elsewhere, the defendant

EUGENIO PEDRAZA,

aided and abetted by others known and unknown to the Grand Jury, corruptly altered, destroyed, and concealed a record or document and attempted to corruptly alter, destroy, and conceal a record or document, with the intent to impair the record or document's integrity or availability for use in an official proceeding, to wit, an investigation being conducted by the FBI and an investigation before a Grand Jury empaneled in the District of Columbia, by causing falsified supervisory case review worksheets to be removed from MCA case files.

All in violation of Title 18, United States Code, Section 1512(c)(1) and 2.

29

## **COUNT THIRTEEN**
18 U.S.C. §§ 1519 and 2
(Falsification of Records in Federal Investigations and Aiding and Abetting)

94.     The allegations contained in paragraphs 1-24, 29-51 and 91-92 of this Indictment are realleged as though fully set forth within.

95.     From in or about January 2012 through in or about February 2012, in the Southern District of Texas and elsewhere, the defendant

EUGENIO PEDRAZA

aided and abetted by others known and unknown to the Grand Jury, while acting in relation to and in contemplation of a matter within the jurisdiction of the FBI, knowingly destroyed and concealed documents and records, specifically falsified supervisory case review worksheets, with the intent to impede, obstruct, and influence the investigation and proper administration of the matter.

All in violation of Title 18, United States Code, Section 1519 and 2.

Dated: April 9, 2013

                         A TRUE BILL:


                         _____
                         FOREPERSON OF THE GRAND JURY


JACK SMITH                       KENNETH MAGIDSON
Chief, Public Integrity Section       UNITED STATES ATTORNEY

_____
ERIC L. GIBSON
Trial Attorney
Public Integrity Section
Criminal Division
United States Department of Justice
1400 New York Avenue, NW
Suite 12100
Washington, DC 20005
(202) 514-1412