```
                 IN THE UNITED STATES DISTRICT COURT
                     SOUTHERN DISTRICT OF TEXAS
                        BROWNSVILLE DIVISION
_____
                                    )
UNITED STATES OF AMERICA            )
                                    )
                                    ) CRIMINAL ACTION NO.
VS.                                 ) B-13-305
                                    )
EUGENIO PEDRAZA                     )
_____)


                    SCHEDULED SENTENCING HEARING
                 BEFORE THE HONORABLE ANDREW S. HANEN
                           JULY 14, 2014




APPEARANCES:

For the Government:        MR. BRIAN K. KIDD
                           USDOJ, Criminal Division
                           1400 New York Ave., N.W.,
                           Suite 12100
                           Washington, D.C.  20005

For Deft. Pedraza:         MR. LARRY EASTEPP
                           Larry D. Eastepp P.C.
                           5300 Memorial, Suite 1000
                           Houston, Texas  77007



Transcribed by:            BARBARA BARNARD
                           Official Court Reporter
                           600 E. Harrison, Box 301
                           Brownsville, Texas  78520
                           (956)982-9668
```

1       THE COURT: All right. Be seated, please.
2    All right. We're here in B-13-305, United States of America
3    versus Eugenio Pedraza.
4    Mr. Kidd, you're here for the government?
5       MR. KIDD: I am, Your Honor.
6       THE COURT: And, Mr. Eastepp, you're here for
7    Mr. Pedraza?
8       MR. EASTEPP: I am. He's obviously present. We're
9    ready, Your Honor.
10       THE COURT: All right. Let me -- I'm going to give
11   y'all opportunity to reply to this, so I don't want y'all to
12   panic. I'm not trying to ambush either side on this. Let me
13   explain something that troubles me about this case. And I'm
14   glad, Mr. Kidd, you're here, and I'm glad, Mr. Eastepp, you're
15   here as opposed to some of the other lawyers, because y'all have
16   been here the entire length of the case.
17      From the get-go, the defendants -- and, of course, back then
18   we had Mr. Rodriguez and Mr. Pedraza as defendants. The
19   defendants maintained basically that there's no cause of action
20   here. There's no crime. We held hearings on that. You know, I
21   wrote an opinion on that where I agreed with the government that
22   I thought -- I threw some things out, but I kept other things,
23   basically 1512 and 1519, saying if you impair an investigation,
24   it's a crime. Or in 1519's case, if you conceal, cover-up
25   falsify, alter, destroy something with the intent to impede,

1   obstruct or influence, it's a crime.

2       And what I'm worried about -- and maybe, Mr. Kidd, you can
3   tell me this.  At least in part you may know the answer to this.
4   What's ever happened to Mr. Ryan in Washington?  Was it Ryan?

5           MR. KIDD:  It is, Your Honor.  As of today, nothing has
6   happened, but there is an ongoing investigation.  I think that's
7   about as much as I can say.

8           THE COURT:  Well, here's what -- here's what worries me.
9   That obviously worries me a little bit.  And it comes on the
10  heels -- and I'm telling you in open court that what I say here
11  should not be taken as gospel because obviously I don't know any
12  of the facts.  I don't know anything other than what a man off
13  the street would know.  But it worries me that we're in this
14  courtroom saying that what Mr. Pedraza did is a crime, when in
15  Washington, D.C., it's not a crime.  I mean, again, all I'm
16  saying is what I rely upon and with a huge grain of salt.

17      But, for instance, nothing seems to have happened to
18  Mr. Ryan.  Nothing seems to be happening in the IRS
19  investigation.  And, again, with a huge grain of salt, if what
20  is reported in the press happened, that's got to be as bad or
21  worse than anything Mr. Pedraza did.  And yet I hear the powers
22  that be on -- you know, not you, Mr. Kidd, not Mr. Cooney, but
23  your boss' boss' boss saying there's no crime here.  And if
24  there's no crime there and there's no crime in Mr. Ryan's case,
25  albeit -- and I understand the facts are different -- why is

1  there a crime here?
2       And I -- and I'm voicing this early on before we get to
3  objections because I've read everything both sides have filed.
4  But I don't want to proceed in this case if it turns out there's
5  one law that applies in South Texas and there's another law that
6  applies in Washington, D.C., because I don't think that's right.
7       And I'm sure neither side is equipped to give me any comfort
8  one way or the other on that because I know neither of y'all
9  have been involved in that.  And obviously I'm not going to rule
10 on some legal point based on what I read in the newspaper
11 because that's not fair to anybody.  Plus there's -- I started
12 to say a 50 percent chance what you read is wrong.  It may be a
13 lot bigger than 50 percent.  It may be 99 percent.
14      But it does -- I'm troubled by the fact that -- that there's
15 one standard of law being applied down here where the Justice
16 Department is arguing this is a crime, this is a crime, this is
17 a crime; and besides your argument, my independent research
18 confirms you're right.  Or at least in part I thought you were
19 right.  If I sentence Mr. Pedraza and the Fifth Circuit reverses
20 me, then we'll find out I was wrong.  But, you know, you've
21 convinced me that at least some of these causes of action are
22 valid, but now I'm being -- I'm worried that I was wrong about
23 that because of what I'm -- of the position I'm hearing the
24 Justice Department take in Washington.
25      And my -- I guess my only concern here -- not my only

concern, but my main concern today is that if something is illegal in McAllen or in Brownsville, the same standard ought to apply in Washington, D.C. And if something is not illegal in Washington, D.C., it ought to not be illegal here.

And obviously Mr. Pedraza has a vested interest in this and so does the government in its prosecution. I have less of a vested interest in which way is right, but I do have a big vested interest in that we ought to be consistent; that if it's illegal in Washington, it ought to be illegal here. And if it's legal in Washington, it ought to be legal here.

Now, having said that, we all know that facts make all the difference in a case, and I don't know any of the facts in the other cases. And obviously we had the facts that were disputed here resolved by the jury, and so I know what these facts are. But I'm uncomfortable as a -- as a matter of law without some comfort, especially given the amount of time that Mr. Pedraza is looking at per the PSI, with just blithely coming in and addressing the objections and sentencing him and going on about our business when it doesn't -- when I have a worry, let's say, that the -- that he's being judged by a different standard than other folks are being judged by.

And I guess I'm soliciting -- I know this is not what y'all came down to argue about, so I -- and so I'm readily conceding this is somewhat of an ambush in a way. But I'm not -- I'm not -- I don't want to proceed to sentencing until I have some

1   comfort level on this.
2       So, Mr. Eastepp, you're starting to rise, so I'll let you go
3   first.
4           MR. EASTEPP:  Judge, obviously Mr. Pedraza, as noted in
5   the presentence report, has complied with every condition of his
6   release and will continue to do so, so meaning he'll show up
7   tomorrow or at midnight or three weeks from now or whenever.
8       You know that I've had those same concerns.  What I would
9   suggest to the Court is that we continue the sentencing today
10  and let us provide any supplemental briefing for the Court on
11  this issue.  And I don't mind if the government sub -- you know,
12  I've done his job and did it for 22 years, including 14 as a
13  public corruption prosecutor, that they make an in-camera
14  submission to the Court as to what's going on and some matters
15  the Court may have concern about.  I realize I shouldn't have
16  access fully to all of that, but I don't mind as -- if they do
17  that.
18      But I've had great concerns about these very same issues,
19  that somehow Mr. Pedraza was being singled out when other people
20  weren't.  And then when that presentence report -- you know from
21  my filings what I think of it as to the penalties he's facing as
22  compared to others, particularly similarly situated.  So I would
23  move to continue it and will follow any order of the Court to
24  provide any further briefing or anything that you want us to do.
25          THE COURT:  What's your thoughts, Mr. Kidd?  I know I'm

1  hitting you cold.
2          MR. KIDD: Your Honor, I'll take this piecemeal. So
3  with respect to Ryan, I think what we have here is this is a
4  pretty typical case since rolling out the way that these things
5  do, is we're taking it piecemeal, one at a time. The
6  individuals in McAllen were indicted and they've been
7  prosecuted, and we are now continuing with the investigation.
8      I can't say one way or another where that investigation is
9  going to lead, but I can tell you that as the prosecutor that
10 was working on this case, if I believed that Ryan or anybody
11 else in Washington, D.C. violated the law, either 1519, 1512, it
12 would be my recommendation they be prosecuted.
13     With respect to IRS, I can't speak on that. I'm not in a
14 position to speak on it. I will probably never be in a position
15 to speak on it. I would adamantly oppose any briefing on a
16 government investigation that is ongoing and current. I don't
17 see why that's --
18         THE COURT: Well, is there an ongoing investigation?
19         MR. KIDD: With respect to Ryan?
20         THE COURT: With respect to the IRS.
21         MR. KIDD: That's just not a case I can -- that is
22 outside of the scope of what I know.
23         THE COURT: Well, what -- I mean, how do I sentence
24 Mr. Pedraza for a crime if what he did here and what's happening
25 in Washington are considered to be two different things and

1    they're being prosecuted and he's not?
2            MR. KIDD:  Well, I don't believe we're -- I think we're
3    dealing with apples and oranges here.  I don't --
4            THE COURT:  Well, see, I don't know that.
5            MR. KIDD:  Okay.
6            THE COURT:  And that's what worries me.
7            MR. KIDD:  And I don't know for sure because, again,
8    what I know is probably less than what you know because I
9    just --
10           THE COURT:  Well --
11           MR. KIDD:  -- haven't read up on it all that much.
12           THE COURT:  I don't profess to know anything.
13           MR. KIDD:  And neither do I, so we're kind of at a zero
14   sum here.
15       But I can tell you that Mr. Pedraza should be sentenced
16   because he was charged by the grand jury.  He was found guilty
17   by the petit jury.  So was everybody else.  You know, the other
18   individuals were given non-prosecution agreements.  They
19   testified.  Mr. Ball was also prosecuted.  Individuals that
20   violated 1519 or 1512 or 371 were held responsible out of the
21   Brownsville office.  Mr. Pedraza was not targeted.  This is the
22   evidence we have.  This is what our investigation revealed.
23   Those were the charges that were brought.
24       They were not brought here and not brought in Washington
25   because we thought let's pick on the people in Brownsville.

1   That's just not the way this thing played out.  Like I said, the
2   investigation is continuing.
3           THE COURT:  Here's my problem.
4           MR. KIDD:  Uh-huh.
5           THE COURT:  I mean, one of the things I'm supposed to do
6   as a judge is not let there be large disparities in
7   sentencing --
8           MR. KIDD:  Uh-huh.
9           THE COURT:  -- between individuals that have committed
10  the same crime.
11          MR. KIDD:  Yes.
12          THE COURT:  And how do I give myself any comfort that
13  I'm not doing that if I'm sentencing Mr. Pedraza and -- let
14  me -- I don't remember --
15          MR. KIDD:  Indirectly.
16          THE COURT:  -- the exact guideline range, but it was --
17          MR. KIDD:  63 to 78 months, Your Honor.
18          THE COURT:  Yeah.  I mean, it was healthy; or perhaps if
19  you're in Mr. Pedraza's situation, unhealthy.  But when other
20  people are facing zero.
21          MR. KIDD:  And when you say "other people," who are you
22  referring to?  The individuals in this case?
23          THE COURT:  Well, individuals in this case and in other
24  cases.
25          MR. KIDD:  I can't speak for the other cases.  I'm not

1    aware of anybody that I -- that has violated 1519 or 1512 and
2    the facts are there and the decision has been made not to
3    prosecute them and let them walk free.  That I'm not aware of,
4    but in this case --
5           THE COURT:  You understand, I don't get much comfort in
6    "It's still under investigation."  I mean, you know, we've had
7    matters under investigation for years, and nothing ever happens
8    one way or the other.  It just sits there and sits there and
9    sits there and sits there and sits there.
10          MR. KIDD:  Your Honor, I'm just not in a position to go
11   into further detail, but I can tell you it is actively under
12   investigation.
13          THE COURT:  Let me ask you a different question then.
14          MR. KIDD:  Sure.
15          THE COURT:  How can you give me any comfort if it --
16   here's my problem.  You and Mr. Gibson -- and I don't mean that
17   the way I said that, to sound disparagingly, because I'm not --
18   I mean, you guys are doing your job.  I mean, you were in here,
19   you know, arguing vehemently that Mr. Pedraza and, at the time
20   Mr. Rodriguez, all violated these three statutes.
21          MR. KIDD:  Uh-huh.
22          THE COURT:  1505, 1512 and 1519.  And to -- I guess to a
23   certain extent, you can say I bought your argument; or to a
24   certain extent, you could say once I researched the law, I was
25   convinced you were at least two-thirds of the way right.  But

1  now I hear again in the lay press, and I'm -- so I'm taking that
2  with a big caveat -- that other people in Justice Department are
3  saying that's not right.
4      So how do I -- how do I get some comfort that I've made the
5  right decision?
6          MR. KIDD:  Your Honor, I simply cannot stand here and
7  tell you what the powers that be in the Department of Justice,
8  what decision they are or are not making.
9          THE COURT:  Let me ask you then a hypothetical question
10 solely.  I mean, do you agree with me, at least in theory, that
11 the Justice Department ought to treat equally situated
12 individuals in different parts of the country the same way?
13         MR. KIDD:  If an individual in any other state did the
14 exact same things that Mr. Pedraza did, I believe they should be
15 prosecuted in the same way that Mr. Pedraza was.
16         THE COURT:  Okay.  I mean, that's essentially what I was
17 asking.  So we at least agree on that.
18         MR. KIDD:  And obviously every defendant has their own
19 characteristics and they get treated differently --
20         THE COURT:  I understand.
21         MR. KIDD:  -- but held responsible.  Held responsible
22 would be the proper way to say that, Your Honor.
23         THE COURT:  I understand that.  So as far as the
24 government is concerned, I mean, there's no -- there's nothing
25 you can offer to the Court to give me any comfort that other

1  individuals that have either obstructed justice, altered
2  documents, destroyed documents, things of that nature are
3  getting treated the same as Mr. Pedraza?
4          MR. KIDD:  Department wide, Your Honor?  I mean, I just
5  can't -- I can't speak for the entire department.  I can speak
6  for myself.  I can speak for the investigations that I'm
7  currently taking part in.
8          THE COURT:  I understand that.
9          MR. KIDD:  Unfortunately, Your Honor, I would love to be
10 able to give you comfort on kind of a broad level.  But without
11 speaking out of turn or about things I know nothing about, I
12 don't think I can do that.
13    It is my understanding that similarly situated individuals
14 would be treated the same way.  That is my understanding.
15 Whether that, in fact, is the case 100 percent of the time, I
16 just can't speak to that.  And I don't think there's any amount
17 of briefing I could do.  I just don't think there's anything I
18 personally could do to ever get to that level.
19         THE COURT:  Well, but you realize you're not you
20 personally.  When you're here in my court, you are the Justice
21 Department.
22         MR. KIDD:  Of course.
23         THE COURT:  And you're it.  You're everybody.
24         MR. KIDD:  Absolutely, uh-huh.  And that's why I say my
25 understanding is that everybody who is similarly situated will

```
 1   be treated the same way.
 2           THE COURT:  All right.  Here's what I want to do.  I'm
 3   going to continue the sentencing to September 15th at 1:30.  I'm
 4   going to give Mr. Kidd, the government, to August 15th to file
 5   whatever you think appropriate.  And I'm giving you permission
 6   to file it in a sealed manner if you want to file it sealed.
 7        And then I'm -- Mr. Eastepp, I'm going to give you to
 8   September 5th to respond to anything that's filed.
 9           MR. KIDD:  So just to be clear, Your Honor.  So sealed,
10   but defense counsel is going to have access to it?
11           THE COURT:  And if you want to file it -- he's already
12   said it's all right with him if you file it in-camera, so you
13   can file it in-camera.  But you know the two cases I'm worried
14   about.
15           MR. KIDD:  So -- and by appropriate -- and not to --
16   sorry, Your Honor.  Just so I'm very clear.  By what the
17   government deems appropriate, it is to bring you some level of
18   comfort, to the extent we can, with respect to the continuing
19   investigation of DHS-OIG employees in Washington, D.C. and the
20   continuing investigation into the higher ups at IRS.
21           THE COURT:  Well, yeah, or the other people -- here's
22   what I want.  I want comfort that they're going to be treated or
23   are being treated the same way Mr. Pedraza was being treated.
24   Because -- and, I mean, there may be 100 other circumstances out
25   there that I don't know anything about, and maybe you know about
```

1    them because of where you work. But those are the two that
2    immediately come to mind because one of them is part of this
3    case. Or even though it's an extenuated part of this case, and
4    the other one is obviously in the press.
5        But my concern is that he has been singled out and is
6    somehow being prosecuted in a different fashion than everybody
7    else. And if that's the case, you know, I think you and I have
8    agreed, if he's similarly situated, that's not right. Now, the
9    facts may be a thousand percent different.
10            MR. KIDD: And by similarly situated, I do mean with
11   similar facts.
12            THE COURT: No, I -- you and I are on the same
13   wavelength on that. I agree with that. I mean, but, you know,
14   to put it in a different scenario, if somebody robs the First
15   National Bank of Brownsville, they're facing the same kind of
16   prosecution they would get if they robbed the First National
17   Bank of New York.
18       And while we all know facts and circumstances make all the
19   difference in cases -- and that may be what you want to file and
20   say: Hey, Judge, look, the facts are so different in these
21   cases. And if you want to put them in-camera, here are the
22   facts in this case, I'm not going to disclose any secret sauce
23   to anybody. But I want some kind of comfort level that the
24   Court is not being used to single out an individual where other
25   people aren't going to be prosecuted for this.

1    MR. KIDD:  And just for the record, Your Honor, I think
2 we keep talking about an individual, but really what we're
3 talking about here are individuals, because Mr. Pedraza was not
4 the only person held responsible for this criminal conduct.
5 There were five other special agents who were given
6 non-prosecution agreements and testified obviously, and Mr. Ball
7 pled guilty.
8    THE COURT:  Well, but he's the only one that's been
9 convicted other than Mr. Ball.
10    MR. KIDD:  Mr. Ball was also convicted.
11    THE COURT:  Right.
12    MR. EASTEPP:  I was about to say, he'll take that deal.
13    THE COURT:  He's not in my court, though.  I have no
14 control over Mr. Ball.
15    MR. EASTEPP:  I assume this filing by the government,
16 there will be a component that I will get to see along with
17 the -- I have to know what to respond to.  I understand there
18 may be a part that I can't see that actually details certain
19 facts.
20    THE COURT:  Right.  And so, I mean, Mr. Kidd, if you
21 feel like I've -- I'm trying not to put you in a box, even
22 though I know I am a little bit or maybe a lot of bit, depending
23 on how you look at it.
24    MR. KIDD:  Seems like a pretty tight box, but I'll be
25 all right.

1    THE COURT: But I'm trying to -- and the reason I'm not
2 being more specific, the reason I'm not saying: Well, tell me
3 A, B, C, and D, is because I'm trying not to put you in a box.
4 But I'm trying to -- I'm giving you some leeway to give me some
5 comfort. And I know that's not a legal term, but you know what
6 I'm asking.
7    MR. KIDD: I understand what you're saying, Your Honor.
8 I understand what you're saying.
9    THE COURT: You know, if I wanted to ambush you, I
10 wouldn't be giving you this. I'd just be ruling. But you can
11 basically -- obviously copy Mr. Eastepp with anything you don't
12 mind him seeing that's not secret sauce; that's not, you know,
13 the -- what is it, Bush's Baked Beans that has the secret
14 recipe? And I won't disclose anything that you file to me in a
15 sealed fashion in-camera without any discussion between us
16 before.
17    MR. KIDD: Okay.
18    THE COURT: I just want there to be some kind of -- I
19 mean, because Mr. Pedraza is looking at over five years in jail.
20 And I think in order to be fair to him and, again, to give me
21 some comfort, I want to be sure that he's being treated like
22 anybody else in his same situation. And I realize you're not
23 involved in that -- well, I don't know whether you are or not.
24 I'm assuming you're not involved in the IRS deal, but --
25    MR. KIDD: I will tell the Court that I am not involved

1    in the IRS.
2             THE COURT:  I was assuming that.  And I don't know if
3    you're involved or not involved in the other situation.
4             MR. KIDD:  I am partially involved in the other
5    situation, Your Honor.
6             THE COURT:  But -- and, I mean, not hesitate to say this
7    on the record, I don't know the facts even in that situation
8    other than I've read the entire grand jury testimony of the
9    Washington, D.C. grand jury.  But, you know, what he did and
10   what he didn't do and what the witnesses are going to say,
11   obviously I don't know that either.
12      And I don't mean to unnecessarily drag this out, but before
13   I -- you know, Mr. Pedraza has no criminal record other than
14   this.  And before I, you know, sentence him to something that at
15   least in the -- even in the neighborhood we're talking about, I
16   feel he has a right to have -- it's going to be no comfort to
17   him, I know, but at least it will be some comfort to me that
18   we're following the law and the law is being uniformly applied.
19      All right.  Have I derailed the hearing enough for both of
20   you two?
21            MR. KIDD:  I don't think we're even in the station
22   anymore.  That's fine.
23      Just a few things for the record, Your Honor, if I may.
24   September 15th, I know you've set that as the hearing date.  I
25   think that's going to be fine.  That same day I have a 16

1  defendant RICO trial scheduled to start in Puerto Rico.  I'm
2  guessing that's not going to go forward.  I just think that's
3  pretty well shelved.
4          THE COURT:  If that date becomes a problem, I will --
5  let Cristi know, and we'll move it.
6          MR. KIDD:  I'll notify everybody.
7          MR. EASTEPP:  I don't have my electronic device
8  obviously that keeps my schedule.  I was thinking the same
9  thing.  I don't think I have a conflict, but I'll certainly let
10 Cristi and Mr. Kidd know if I do.
11         THE COURT:  We'll work with you on that.  I arbitrarily
12 just picked that.
13         MR. KIDD:  And again, I don't anticipate that case
14 actually going to trial that day.
15     And next, just to kind of put this on the record.  I don't
16 anticipate, to the extent I file anything that has anything to
17 do with open and active investigations, that any part of that
18 filing would be made available to Mr. Eastepp.  I just don't
19 envision there's any way that would ever be approved by our
20 office.
21         THE COURT:  I think he understands that, but at least
22 you can refer to it as X, the X case or the Y case or whatever.
23         MR. KIDD:  And Mr. Eastepp and I get along really well.
24 We talk regularly; so, you know, obviously there's going to be
25 nothing that would be a surprise to him.

1   THE COURT: Mr. Eastepp has been in your shoes before.
2   MR. KIDD: Uh-huh.
3   THE COURT: Johnny, is Mr. Pedraza in compliance?
4   PRETRIAL OFFICER: Yes, Your Honor, he has.
5   THE COURT: All right. Any objection?
6   MR. KIDD: None whatsoever, Your Honor.
7   THE COURT: All right. Mr. Pedraza will be -- remain
8   free under the same terms and conditions he's been under.
9       All right. Counsel, I apologize for this. But, I mean, it
10  really, as you might guess given my docket that, I mean, I kind
11  of focus on the case -- next week's cases this week and not a
12  month in advance. And reading both sides' submissions,
13  including one filed by the government, I don't know, Friday,
14  yesterday?
15  MR. KIDD: It was Friday afternoon.
16  THE COURT: Well, you know, that gets me focused on what
17  I need to focus on. And so I apologize for the lack of notice
18  on this. Otherwise we'll -- we will go through on
19  September 15th and resolve this matter.
20  MR. KIDD: Excellent.
21  MR. EASTEPP: Thanks, Judge.
22  MR. KIDD: Thank you, Your Honor.
23     *(Court adjourned at 1:58.)*
24                              * * *
25     (End of requested transcript)

```
 1                          -oOo-

 2      I certify that the foregoing is a correct transcript from

 3   the record of proceedings in the above matter.

 4

 5   Date:  July 15, 2014

 6

 7
                                     /s/_____
 8                                   Signature of Court Reporter
                                     Barbara Barnard
 9
```